### KURTZ et al. v. BLATT et al.

#### SAME v. COLUMBIA HAT FRAME CO.

#### (District Court, S. D. New York. February 14, 1920.)

PATENTS ⬤328—FOR HAT LINING VALID AND INFRINGED.

The Kurtz patent, No. 1,216,140, for a hat lining, *held* not anticipated by either prior patents or prior use, and valid and infringed.

In Equity. Separate suits by Alfred Kurtz and the Hat Lining Board of Trade, Incorporated, against Meyer Blatt and Nathan Silberstein, copartners, and against the Columbia Hat Frame Company, for infringement of Kurtz patent, No. 1,216,140, February 13, 1917, for hat lining. Decrees for complainants.

Tobias A. Keppler, of New York City (Philip C. Peck and Maurice Block, both of New York City, of counsel), for plaintiffs.

Berg & Browne, of New York City, for defendants.

MAYER, District Judge. The patent deals with hat linings, and the nature of the subject-matter is sufficiently disclosed by the two claims in suit, which are as follows:

"1. A hat lining comprising a crown piece, a side piece, an uncovered cord exposed between said crown piece and side piece, and means for securing said crown piece, side piece, and cord together for forming an ornate seam between said crown piece and side piece.

"2. A hat lining comprising a crown piece; a side piece; an uncovered cord exposed between said crown piece and side piece; and means for securing said crown piece, side piece, and cord together for forming an ornate seam between said crown piece and side piece; said means embodying a single row of stitching passing through said crown piece, side piece and cord."

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

It is urged that the Kurtz patent marks a forward step in the art sufficiently ingenious to rise to the dignity of invention. The earlier forms of linings for women's hats comprised the so-called "draw string" or "straight" lining, which is described as a piece of material "straight cut and then sewed on one side with a hem and then drawn through a string * * * The string is drawn after it is done."

There were marked disadvantages of this so-called draw string lining, and there is practically no disagreement in the record as to the advance over this type of hat lining which was attained by the Kurtz patent lining. Indeed, there is no prior art worthy of comment except the so-called Rawak lining.

Of the several prior uses, no mention need be made of any, except that of Henry A. Koch. Mr. Koch was formerly a practicing attorney, but went thereafter into the millinery business. He testified that he made a lining in 1903 and 1904 "like the Kurtz lining." There is no reason to doubt that Mr. Koch testified in good faith and believed what he said. The subject-matter of this patent, however, is of a character, where the unsupported testimony of a witness should not be enough upon which to predicate a successful prior use. Mr. Koch was not able to produce any contemporaneous records or exhibits of any kind or description. The subtle influence of mental suggestion to a man's memory after he has seen an article is sometimes difficult for even a man himself to realize. The Kurtz lining has had such a marked commercial success that it seems strange that Koch was not able to do better with his article, if it were, in effect, the same as the Kurtz lining. On all the evidence, the Koch prior use, so called, must be rejected.

Returning, now, to the Rawak patent, No. 1,191,996, it appears that this shows a hat lining having a crown and side piece, but the patentee desired to insert a welt lining between the crown and side piece. To accomplish this he used a folded-over tape 5, which must be cut on the bias to form an annular pocket, the edges of which are then inserted between crown and side piece as shown in Fig. 3. This pocket projecting within the hat, when secured by the stitching 8 loosely holds the covered cord or core 7, which hangs in, and distends, this pocket to look like a welt. The loose fit of the cord 7 within the pocket 6 is clearly shown in Fig. 2, where the cross-sectional cleavage occurs in the drawing. The stitching 8 is far removed from the cord 7—in fact, the cord hangs down in the looped pocket within the lining. In Rawak the inherent stiffness of the cord 7 cannot function to strengthen the seam, nor can the cord prevent buckling or maintain the crown flat as in Kurtz. The Rawak cord 7 is structurally apart and separate from the seam, and in fact can only serve to distend the pocket 6 so that such pocket shall have the mere semblance of a seam to form a welt. It is clear that Rawak did not have the slightest conception of utilizing his cord 7 as an integral part of the hat-lining "incorporated," and at the same time "exposed," between crown and side piece, and "resting in the seam," as Kurtz taught the art, with the twofold function of holding the crown and side piece in place, as well as to keep the crown flat.

The testimony is convincing that the Kurtz lining has several advantages over the Rawak lining, and undoubtedly the Kurtz lining is the last word in this somewhat narrow art. Whether Kurtz shows invention over Rawak is a question which presents some difficulty; but in view of the fact that Kurtz does show real advantages over Rawak, and in view, further, of the very substantial commercial success which the Kurtz lining has attained, any doubt must be resolved in favor of the Kurtz patent.

The important advantages of Kurtz over Rawak are (1) that it is more practical and economical than Rawak; and (2) that it is simpler and neater. In a case of this kind, where the art is simple, and any forward step seems simple, it is important to approach the consideration of the patent from a correct mental attitude. What may be characterized as invention in an art of this kind would, of course, be regarded as insignificant in an art which commanded the attention of highly trained mechanical or scientific minds. This, however, is always one of the interesting problems of a patent case, and the effort must always be to view the subject-matter from the standpoint of the art concerned.

Tested by this and the other standards to which reference has been made, I am of opinion that the patent in suit is valid and infringed. Plaintiff may have a decree accordingly.