### P. E. SHARPLESS CO. v. CRAWFORD FARMS, Inc.

(Circuit Court of Appeals, Second Circuit. January 8, 1923.)

No. 130.

1. Patents ⬅14—Food product may be patentable; "new and useful combination of matter."

An improved composite food product and method of making the same may be patentable as a new and useful combination of matter.

2. Patents ⬅14—Mixture may be patentable.

A patentable composition of matter may be formed by the intermixture of two or more ingredients, which develop a different or additional property or properties which the several ingredients individually do not possess in common.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Patents ⬳328—1,258,438, for cheese blend, valid and infringed.**

The Nusbaum patent, No. 1,258,438, for a process of blending cheese and the resulting product, which is a soft cheese, but having the flavor and taste of Roquefort, *held* valid and infringed as to claim 1, for process, but invalid as to claims 4 and 5, for product.

**4. Trade-marks and trade-names and unfair competition ⬳70(4)—Similarity of packages held not such as to constitute unfair competition.**

Similarity of defendant's packages to complainant's in size and style of wrapping *held* not to constitute unfair competition, where each was clearly marked with the maker's name, and there could be no confusion by ordinary purchasers.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the P. E. Sharpless Company against the Crawford Farms, Inc. Decree for defendant, and complainant appeals. Reversed in part.

Hector T. Fenton, of New York City, for appellant.

Munn, Anderson & Munn, of New York City (T. Hart Anderson, of New York City, of counsel), for appellee.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MANTON, Circuit Judge. Appellant sues for infringement of patent No. 1,258,438 granted to Nusbaum, applied for May 22, 1917, and granted March 5, 1918. It is a grant of a monopoly for a process and a product. The bill also asks for injunctive relief, claiming unfair competition in trade in the packaging and marketing of the product.

The appellant is a Pennsylvania corporation and makes cheese and sells the same commercially in packages. The appellee is a New York corporation and also makes cheese and markets the same commercially in similar sized packages. The inventor, Nusbaum, says he invented the new composition of matter and process of producing it in the autumn of 1916. In the trade, there are two types of cheese, one soft and uncured, and the other hard and cured. These were not thought to be capable of blending into a single composition. The desirability of the invention was, if possible, to retain the physical character of the soft and uncured element, and impart to it the characteristic taste and flavor of the cured cheese, without its physical presence in the composition. He says in the specifications of the patent that his invention relates to the production of a new variety of soft or uncured cheese, and it results in a new composition of matter having for its principal object to impart to the composition the characteristic flavor of the well-known Roquefort cheese, combined with and modified by the commercial soft or uncured cream cheese, made usually from unskimmed milk, while retaining the characteristic physical and other inherent qualities which identify the latter, and to this end the composition of matter consists of elements stated and combined in the manner and substantially in the proportions set forth. The inventor says:

"* * * My invention, however, comprising, not only the new product as such, but the process or method of producing the same. * * * Beginning

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

.with any variety of soft cheese, which is classified as cream cheese because made from whole or unskimmed milk, and hence containing not less than 20 per cent. of butter fat, but which I prefer to make in the best commercial form, by the addition of sufficient cream to increase its butter fat constituent to a percentage varying from 30 to 40 per cent. I make my new composition of approximately eight-ninths parts thereof and approximately one-ninth part of standard commercial Roquefort cheese. Allowing the latter to become sufficiently dried to be friable and crumble readily, I comminute it to practically pulverization, which may be done by any convenient and known means. Then placing the soft cream cheese elements in substantially the proportion stated, in a revolving blade mixer, commonly used in certain branches of this art, or other equivalent mixing device, the other one-ninth part of the intended resultant composition, consisting of the comminuted Roquefort cheese, is then gradually added, as the mixer blades revolve, but in small quantities, and from time to time, so as to insure the soft cheese taking it up and thereby effecting a complete blending of said constituent elements. This step in the process is apt to impart high temperature to the mass, and a partly consequent reduction in density, in consequence whereof I allow the amalgamated mass to cool sufficiently to restore its normal temperature and density, and then, if the resultant composition shows any signs of not being perfectly smooth, the last-described step of the process of blending above described is repeated either in the same machine or preferably in any suitable and known form of grinding machine adapted to be used for the purpose of reducing any lumpy particles in a composition of matter of like character."

After this the composition is sufficiently hard to be molded into small cylinders or rectangular cakes. The identifying characteristics of a homogeneous composition wherein the cured element, the Roquefort cheese, has not only lost its physical characteristics as such, but has imparted such part of that quality to the resultant composition, so as to increase the keeping qualities and obtained the flavor and taste of the Roquefort cheese, it has the characteristics of the soft cream cheese, and is capable of being molded into the commercial form required, and is then wrapped in tinfoil and sold.

The first and second claims of the patent are for the process, and the third, fourth, and fifth are for the product. The claims of the process are:

"1. The process described of producing a homogeneous composite of soft uncured cream cheese and cured Roquefort cheese, which primarily consists in combining approximately eight parts by weight of the former with approximately one part by weight of the latter previously reduced to dried and substantially pulverized condition, and blending the elements of the mass under movable contact in a suitable mixing machine.

"2. The process described of producing a homogeneous composite of soft uncured cream cheese and cured Roquefort cheese, which consists in adding approximately one part of dried and substantially pulverized Roquefort cheese in small quantities, from time to time, to approximately eight parts of soft uncured cream cheese, during combination of the elements of the mass under suitable mechanical admixture; then restoring the normal temperature and density of the resultant mass by cooling, and finally molding the same into commercial form, substantially as described."

The statute provides for the grant of a patent to "any person who has invented or discovered any new and useful * * * composition of matter, or any new and useful improvements thereof," or any "new and useful art * * * or any new and useful improvements thereof" ('art' interpreted to mean method or process). Comp. St. § 9430.

287 F.—42

What the inventor has done by his process is not merely admixing two radically different ingredients normally incapable of admixture and not known to be miscible, nor is it for a method of effecting a general combination or composite of them, but is for producing a specific combination of them wherein one element acts on the other to produce an ultimate product.

It results in one of these elements (cured cheese) physically disappearing while imparting flavor and some of its preservative character as cured cheese to the other element (uncured cheese) and thus producing a composition. It is the process that accomplishes this result. It is done by employing specific relative proportions of them by drying the cured and hard element and reducing it to a pulverized state, and by a true blending of them which is obtained by passing that admixture, so prepared, through relatively movable contacting mechanical elements. In the ordinary and typical case, the method and product are separate inventions. A machine may be new, and the product or manufacture proceeding from it may be old. In that case, the former would be patentable, and the latter not. The machine may be substantially old and the product new. In that event, the latter and not the former would be patentable. Both may be new or both may be old. In the former case both would be patentable, and in the latter neither. Providence Rubber Co. v. Goodyear, 9 Wall. 788, 19 L. Ed. 566.

[1] Did the inventor teach the art something new? And did the product become recognized by those familiar with the art as a new and useful thing? If so, then that result should be resolved in favor of patentable novelty. The question is presented of whether or not a food product or a process of producing it may properly be considered as the subject-matter for the grant of a patent, within the meaning of the statute authorizing the grant for a new and useful composition of matter, or "any new and useful improvement thereof" (as to the product), or any new and useful art, being interpreted to mean or include a method or a process within the lay meaning of those terms. It is to be observed Congress provided for invention in respect "of composition of matter" as one of the four classes of invention. There is no restriction as to the nature of the composition which may be patented. The only limitation is they must be new, useful, and the result of invention.

[2] We think the meritorious result of a method or process has been disclosed by what the inventor here conceived. It is new. It should be given patent protection. A patentable composition of matter may well result or be formed by the intermixture of two or more ingredients, which develop a different or additional property or properties which the several ingredients individually do not possess in common. In Cochrane v. Deener, 94 U. S. 780, 24 L. Ed. 139, a process was described as:

"A mode of treatment of certain materials to produce a given result. It is an act, or a series of acts, performed upon the subject-matter to be transformed and reduced to a different state or thing. If new and useful, it is just as patentable as is a piece of machinery. In the language of the patent law, it is an art. The machinery pointed out as suitable to perform the process may or may not be new or patentable; whilst the process itself may

be altogether new, and produce an entirely new result. The process requires that certain things should be done with certain substances, and in a certain order; but the tools to be used in doing this may be of secondary consequence."

We think a method or process of blending two ingredients (cheese), which is recognized in the art as distinctly different in character and also as normally nonmiscible or capable of blending, and effecting their blending and transformation of one ingredient by the pulverization of one of them and a union of them under moving mechanical contact followed by increasing the density of the resultant mass by refrigeration, so as to enable them to be molded into a fitting commercial form, constituted invention of a process which is patentable.

The defense of prior uses is interposed. Two witnesses testified that they mixed for their own use at their respective homes some years ago, and again one of them during the recent war, French Roquefort cheese and cottage cheese or cream cheese. They sliced the Roquefort with a knife and then added the other cheese to it and mixed the two with a spoon. This was done in proportions of about one part of Roquefort and four of cream cheese. None was sold. Another witness used an old and well-known admixture of Cheddar and Roquefort, both cured cheeses. The proportions and method of admixture and the characteristics of the product were not stated. This was sold commercially as McLaren's cheese. In this test there was nothing that demonstrated plaintiff's process or result.

The record shows that a British patent was granted to one Blake (No. 3,919) in 1897, and it is referred to as a new and improved article of food. He described taking a hard cured cheese and having removed the rind crushed it "between rollers or otherwise" and to 80 parts of this he added 20 parts of cream, which is three-fourths crushed hard cheese to one-fourth of ordinary cream, not cream cheese, in the finished product. He declares the object and effect of this admixture is it "enables a person of poor digestion to eat cheese without any inconvenience" and "aids the process of mastication and digestion." The result of this probably was a Roquefort cheese, coarsely crushed and diluted with cream. It did not blend with that of another of different type. The art may be simple, and the forward step may seem simple, and may not be regarded as one commanding the attention of the highly trained scientific mind; but the effort, in deciding the question of invention, must be to view the subject-matter from the standpoint of the art concerned. Kurtz v. Blatt (D. C.) 263 Fed. 393. We think that something new was taught the art by this process, which raises it to the dignity of invention.

[3] The appellee's witness substantially identifies its process in every step, including the blending of the initial ingredients and its manufacture. All the steps of its process being in the same order as the appellant's, like proportions of ingredients used and employing the same or equivalent elements at some points in the process, makes out the claim of infringement. We think that claim 1 of the process should be held valid and infringed, but that claims 4 and 5 of the product should be held invalid.

[4] The appellant complains that the appellee's cheese packages are

so close a copy of the appellant's cheese packages as to amount to unfair competition, but there is no evidence introduced by the appellant of actual confusion. There is no resemblance of one package to the other, other than that of size, which would not cause confusion. The respective packages are clearly marked showing their origin and the manufacturer's name stamped thereon. There could be no possible confusion by the ordinary purchaser. Smith-Kline & French Co. v. Amer. Druggists Syndicate (C. C. A.) 273 Fed. 84; Cantrell v. Hygeia Distilled Water Co., Inc., 283 Fed. 400, decided January 18, 1922 (C. C. A. Second Circuit). The fact that they are wrapped in tinfoil and dipped in paraffin as a preserver does not support appellant's claim.

Decree modified accordingly.