### BROGDEX CO. v. AMERICAN FRUIT GROWERS, Inc.

District Court, D. Delaware. August 3, 1927.

No. 593.

Patents ⬀328—1,529,461, claims 1 to 7, 9, and 14 to 18, for process for preparing, by use of borax, citrus fruit for market, and product claims, 23 to 25, held valid and infringed.

Brogden and Trowbridge patent, No. 1,529,-461, claims 1 to 7, inclusive, 9, and 14 to 18, inclusive, for process of preparing fresh citrus fruit for market in manner to prevent blue mold decay, by washing fruit in borax solution, and product claims 23 to 25, inclusive, held valid and infringed.

In Equity. Patent infringement suit by the Brogdex Company against the American Fruit Growers, Inc. Decree for plaintiff.

Charles Neave and Alexander C. Neave, both of New York City, Melville Church and R. F. Steward, both of Washington, D. C., and William G. Mahaffy, of Wilmington, Del., for plaintiff.

A. C. Gray and E. Ennalls Berl, both of Wilmington, Del., W. B. Morton and George E. Middleton, both of New York City, and R. T. M. McCready, of Pittsburgh, Pa., for defendant.

MORRIS, District Judge. The elimination or reduction of decay of citrus fruit during transportation to market constitutes the problem dealt with in the patent in suit, No. 1,529,461, issued March 10, 1925, to Brogden & Trowbridge, and assigned by them to Brogdex Company, the plaintiff. The decay sought to be prevented is due mainly to parisitic fungi, penicillium, or blue mold, the spores of which find lodgment and germinate, most frequently, in lesions in the skin of the fruit. The patentee's solution of the problem is set out in these characteristic claims:

"3. In the preparation of fresh fruit for market, the process which comprises subjecting fruit to the action of an aqueous solution of borax, the fluidity, strength and temperature of the treating solution, and the duration of the treatment, being such that exposed rind or skin tissues of the fruit are effectively impregnated with borax and rendered resistant to blue mold decay, while at the same time the fruit is not scalded nor is its freshness or edibility otherwise substantially impaired."

"26. Fresh citrus fruit of which the rind or skin carries borax in amount that is very small, but sufficient to render the fruit resistant to blue mold decay."

Other process claims in suit are Nos. 1, 2, 4 to 7, inclusive, 9, and 14 to 18, inclusive. Other product claims are Nos. 23 to 25, inclusive.

The defendant, American Fruit Growers, Incorporated, admits that it dips its fruit in a borax solution to check blue mold decay. This practice it seeks to justify by the disclosures of the prior art and by asserted prior uses. It contends that the process of the patent in suit embraces broadly all uses of solutions of compounds of boron, particularly borax or boric acid, of sufficient strength to inhibit or retard the growth of blue mold, and that, consequently, the claims of the patent are made invalid by the prior art and prior uses. That borax and boric acid have long been known to possess antiseptic properties, and long been used as preservatives of animal and vegetable matter, is here established beyond question. They were so used, both dry and in solution. The solutions were both hot and cold. The use of a hot solution of boric acid or its salts, to prevent the growth of fungi or mold upon cured meats, by immersing or dipping them into the solution, was disclosed as early as 1879. As early as 1888 boric acid and its salts were used in packing material, such as sawdust, chaff, and shavings, for the preservation of "all kinds of fresh fruits during storage or their transportation to near or distant markets." It was even found that many species of penicillium molds were more or less affected by boric acid and its salts. Yet the record before me discloses with equal certainty that, notwithstanding the well-known properties of the boron radical, supplemented by the teachings with respect to its particular uses and manner of use found in the later publications, for a quarter of a century the search for a specific for the blue mold decay of citrus fruit during transportation continued unabated, but in vain.

Chemicals of widely varying degrees of toxicity were tried and abandoned. Every trial of new means, of whatsoever character, for reducing the decay, ended but in a return to the conviction that in the long-taught and long-practiced careful handling of the fruit and avoidance of wounds and bruises lay the only hope of minimizing the decay. In this practice, standing alone and unaided, every injured orange was a cull. If shipped, the injured orange became a potent agency for the spread of decay. To eliminate the loss arising directly from the exclusion of the injured orange and the far greater indirect loss from its inclusion, inadvertent or otherwise, in the shipment, a remedy supplementing careful handling was long desired and greatly needed. Brogden and Trowbridge were the first to supply it. They departed from the idea that no relief was to be had, save by more and more careful handling, or by the use of chemicals so toxic as to destroy the mold and spores, and turned to the use of a mold-inhibiting reagent comprising the boric acid radical to render the surface of the fruit, and particularly the wounds, unfavorable as a medium for blue mold development.

But their invention, as I understand it, is not the mere use of borax or boric acid, nor of the use of that force in a specific manner; but it consists in the subjection of a specific object to the influence of a specific force, acting through a specific mode of application to produce a specific result. See Robinson on Patents §§ 261–263. Such process is nowhere found in the disclosures of the prior art, though it is true that, viewed retrospectively and ignoring the long unsuccessful search for

a remedy, the claimed process would seem to be wanting in invention over the disclosures of the prior art. Yet I am convinced that the long, unsuccessful search must stand as a bar to such conclusion, unless the failure sooner to resort to the claimed process is satisfactorily explained. Solved problems frequently beget conclusions that the solution was logically deducible from the prior art, but such after the event views are unavailing, when inconsistent with prior efforts and failures, particularly if the result was greatly needed and long sought. Walker, §§ 26 and 42. The decay directly attributable to blue mold amounted in some cases to as much as 30 to 40 per cent. of the shipments. The resulting losses were enormous. Time and time again the shippers in their distress turned to the Department of Agriculture, but to their inquiry the uniform answer throughout the years, until the invention of Brogden and Trowbridge, was the despairing one that nothing had been found that could be put into the wash that was effective against blue mold; that "the only thing to do is to keep the fruit free from injuries."

The only explanation offered by the defendant of the long search and failure is the theory that the Pure Food and Drugs Act of 1906 (34 Stat. 768), being Comp. St. §§ 8717–8728, acted as a deterrent to the use of borax as a food preservative. But, aside from the fact that by the claimed process only the skin or nonedible portion of the citrus fruit is impregnated with the borax, the record discloses that prior to the passage of the act the department experimented with the treatment of citrus fruits with boric acid to prevent blue mold decay, and abandoned the experiments because of the conclusion that no permanent check of the growth of the fungus was obtainable thereby. Moreover, it likewise discloses that thereafter the department reported to the growers from time to time that it had experimented with the use of antiseptics, disinfectants, and fungicides in the wash, and that it had not obtained any results that were worth noting. This evidence renders impossible a conclusion that the long delay in the arrival at the solution of the problem was attributable to the Pure Food and Drugs Act. Consequently I must conclude that invention was not wanting, and that the process claims are valid, unless invalidated by the alleged prior uses.

The alleged prior uses relied upon are many. That borax was used in the preparation of citrus fruits for market by several persons prior to the date of the invention in suit cannot, I think, be seriously questioned. But borax is a cleansing agent, and frequently used as a washing powder, as well as an antiseptic and preservative. That it was used by any one prior to Brogden and Trowbridge for the purpose of preventing decay, and in such manner as effectively to prevent decay, or otherwise than as a washing powder, is not established by the evidence with that degree of certainty which is required with respect to prior uses.

The cases relied upon to show invalidity of the product claims are cases dealing with a manufacture under the Tariff Acts and not under the patent law. That term, as used in the patent law, is broad enough, as I understand it, to include the product of the product claims in suit.

As the claims in suit are valid, and as the defendant not only uses borax, but uses it in the specific manner and for the specific purpose called for by the claims in suit, the prayers of the bill must be granted.