948

District Court, E. D. New York. February 25, 1929.

No. 3326.

Dean, Fairbank, Obrieght & Hirsch, of New York City (George A. Ferris and Morris Hirsch, both of New York City, of counsel), for plaintiff.

Grauer & Rathkopf, of New York City (Charles A. Rathkopf, of New York City, of counsel), for defendant.

CAMPBELL, District Judge. This is an action in equity for the alleged infringement of reissue patent, No. 15,902, issued by the United States Patent Office to Salim F. Zaloom, for preserving compound for pistachio nuts, dated August 26, 1924, original application serial No. 569,972, filed June 21, 1922.

Title to the patent is vested in the plaintiff, together with the right to sue for and collect past damages.

The action is based upon the six claims of the patent in suit, which read as follows:

"1. A compound for treating pistachio nuts consisting of sodium chloride and gum-arabic in aqueous solution.

"2. A compound for treating pistachio nuts which consists of 100 pounds of sodium chloride, 2 pounds gum-arabic in an aqueous solution.

"3. A compound for application to pistachio nuts comprising the following ingredients in substantially the proportions specified, namely, 100 pounds sodium chloride, 2 pounds gum-arabic and 40 gallons of water.

"4. The method of treating pistachio nuts which consists of spraying them with an aqueous solution of sodium chloride and gum-arabic while the nuts are passing through a roaster.

"5. The method of treating nuts to give the shells thereof a whitish appearance which consists in covering the shells with an intimate mixture of salt and a mucilaginous substance.

"6. As a new article of food, a nut, the shell of which is coated with a uniform adhering layer of an intimate mixture of salt and a mucilaginous substance, whereby the shell is given a whitish appearance."

Defendant has interposed the twofold answer of invalidity and noninfringement.

For ages pistachio nuts have been roasted and salted.

The old-style method of roasting, as practiced in Syria, the home of the pistachio nut, as well as in America, was to place the nuts, in the shells, in a large vat, which was placed over a fire and the nuts agitated with a stick to prevent scorching. When sufficiently roasted, the nuts, still in the shells, were removed and placed in a box, where a solution of salt and water was sprinkled over the nuts, and they were moved around, so the salt water would apply on all of them, and they would dry in the air.

They were shipped from Syria to America in 25-pound secondhand kerosene cans, and while in transit several pounds of salt would have dropped from the nut shells to the bottom of the can.

Due to the shaking off of the salt from the nuts roasted and salted by the old process, they were subject to worminess, webbiness, sogginess, and were unattractive.

Many efforts were made to correct these faults, but none were successful.

The use of salt as a food preservative has long been well known, and it performs the same function whether on fish or nuts. But although fish, which is well salted for preservation, is commonly soaked in water before preparation for eating, to remove the excess salt, that could not be done with nuts, which are commonly eaten as confections, because by such soaking process, even if otherwise feasible, the nut would be rendered soggy.

The problem which confronted the patentee was to preserve the nut with an ample quantity of salt, and at the same time to avoid rendering the kernel unpalatable by any excess thereof.

The solution of this problem was found by the patentee to be the securing of 90 per cent. of the comparatively large quantity of salt upon the shell of the nut, but as the shell of the nut was smooth and glossy, he found it

necessary to coat the shell with an adhering layer of mucilaginous substance.

This not only held the salt on the shell, where it acted as a preservative and preserved the kernel of the nut from worminess or bacterial spoilage, but also prevented the kernel from becoming soggy, and not only protected the kernel of the nut from excessive heating and spoilage when exposed to the sun, but also made the nuts attractive to the eye, especially for the purpose of window display in the stores in which they are sold.

That such results have been accomplished by the process of the patent in suit is amply sustained, and the explanation of the cause thereof is found in the testimony of the witness Herstein.

The complaints of spoilage which were frequently made with reference to nuts prepared according to the old style ceased with the production of the nut roasted and salted under the process of the patent in suit, and the sales of nuts roasted and salted in the old style has since then been substantially limited to Syrians, but the business of plaintiff in nuts roasted and salted under the process of the patent in suit has increased from $15,000 in the old style in 1921, to $630,000 in new style in 1927.

Defendant offered in evidence, to show the prior state of the art, the old style of roasting and salting as practiced in Syria, which has been described, and I am convinced that the defendant Shuda was in error when he said that he used starch, flour, and gum in Syria as an adhesive in preparing these nuts.

United States patent No. 172,677, issued to Abigail S. White, for improvement in compositions for preserving eggs, dated January 25, 1876, and United States patent No. 116,976, issued to James Timmons McKim, for improvement in compositions for preserving eggs, dated July 11, 1871, are not even for an analogous art, because the purpose of treating the shell of the egg with a composition is to seal up the bores and exclude the air, and not to improve or change the quality of the egg itself; and this clearly appears from the fact that the composition, if it was applied to the egg inside the shell, would make it inedible. Therefore, the teaching of such patents would not be available in the case of pistachio nuts, where it is the kernel itself which is sought to be preserved.

United States patent No. 229,042, issued to Gilbert F. Holland, for compound for preserving food, dated June 22, 1880, is remote from the salting of pistachio nuts, because the patent discloses the use of substances applied to the surface of the article of food sought to be preserved, which may readily be removed therefrom by washing, while pistachio nuts would lose many of the valuable characteristics by washing.

United States patent No. 175,970, issued to Andrew J. Grauel, for improvement in compositions for coating coffee, dated April 11, 1876; United States patent No. 131,852, issued to John T. Cooke, for improvement in compounds for coating roasted coffee, dated October 1, 1872; United States patent No. 167,383, issued to James H. Bell and John H. Conrad, for improvement in compositions for glazing roasted coffee, dated September 7, 1875; and United States patent No. 91,870, dated June 29, 1869, issued to Edward E. Rinehart, for improvement in the manufacture of roasted coffee—are remote, because the purpose as expressed in such patents is to coat the bean itself, whereas in the pistachio nut the purpose is to coat the outer shell and only admit sufficient salt to season the kernel of the nut.

Practical Pan Man's Guide, by Octave Grillon, April, 1911. This book contains recipes for the manufacture of dragee. Jordan almonds are made of shelled almonds which, after drying in a stove or drying room, are gum-coated, engrossed, filled, and finished.

The same process is followed in making pistachio dragees, sugar being used with the gum in both instances.

The product is in no sense the same as that produced by the process of the patent in suit, and the process differs. The Jordan almond is a hard sugar-coated nut, not a nut seasoned and preserved in its own shell.

American Candy Maker, by Charles C. Huling, 1902. This book teaches the art of producing salted almonds, salted peanuts, and Jordan almonds.

The remoteness of Jordan almonds has already been pointed out, and the salted almond or peanut is still more remote. All of these are shelled nuts, not nuts preserved in the shell, and both the process and product differ from the patent in suit. There is no reference to pistachio nuts in this book.

Charles Apell, Up-To-Date Candy Teacher, 1921.

This book teaches the art of salting peanuts and almonds.

As in the prior publication, the nuts are shelled and not nuts preserved in the shell, as is the case in the patent in suit. Pistachio nuts are not mentioned in this book.

Friedman's Common-Sense Candy Teacher, by Jacob Friedman, Third Edition, 1915.

This book teaches the art of salting pecans and peanuts, and also deals with shelled nuts, and not nuts preserved in the shell, as does the patent in suit. Pistachio nuts are not mentioned in this book.

The processes of said patents and the recipes described in said publications have been put to practical use, but none of the patents or publications offered by the defendant anticipate or limit the patent in suit.

The defendant also offered to show anticipation by the following alleged prior uses:

The alleged prior use by the defendant. This is not supported by convincing evidence.

The alleged prior use in a foreign country was not shown to my satisfaction, and, if it was, it would not be a defense.

The alleged use of a similar process by the defendant after coming to this country was not proved to my satisfaction, as the testimony of the defendant and his relative and former partner, Halwany, that he produced a white product, was contradicted by the testimony of the witness Kassouf, who purchased the nuts.

The witness Shalhout, called on behalf of the defendant, failed to corroborate the defendant, as he admitted on cross-examination that the nuts he bought from defendant in 1919 were not as white as Exhibits 9 and 10.

The bills in Arabic, offered as documentary proof, fail to corroborate, as all that they show are sales of pistachio nuts by defendant to Shalhout, but not that they were white coated.

Both Halwany and defendant are compelled to rely entirely on their recollection, as they do not read.

The alleged use by Abaid needs no extended consideration, as I am convinced that he used the old-style method and did not make white coated nuts.

The alleged use by Malouf is negatived by his experiments with plaster of Paris and attempts to ascertain Zaloom's process.

If the witness Malouf used gum-arabic for coating imported raw nuts in 1908, he could have been corroborated by calling his brother, who he says did the coating, or customers who bought them.

The witness Walsh, called by plaintiff, testified that he bought pistachio nuts from T. K. Malouf, and Abaid and Samaha, in 1916 and 1917, but that they were of the old style.

If the witness Malouf is not in error, it seems almost impossible that he would have given up the large opportunity offered to him, and limited himself to the small Syrian trade.

The alleged use by Caputo hardly needs extended consideration.

He is entirely uncorroborated, and testified that in 1919 he worked one week for a man now dead, whose name he forgets, and that although he had no previous experience, he worked at coating about 30 pounds of pistachio nuts with gum-arabic, starch, salt, and water.

The witnesses Walsh, Ertz, Everson, and Cash testified that they never saw anything like the white coated pistachio nuts in question until they were brought to their attention by the Zaloom concern in 1921.

The contention of the defendant that the presumption of validity of the patent in suit is weakened, if not entirely removed, because it was granted without any citation or consideration of the most relevant art, is without merit because none of the art offered in evidence by the defendant is relevant.

No one had taught the use of an adhesive for retaining a preservative on the shell of the nut, and at the same time preserving and seasoning the kernel of the nut, and no earlier process of which proof was given in this case performed the same function in substantially the same way and produced substantially the same result as that of the process of the patent in suit.

There is novelty and invention in the patent in suit. Brogdex Co. v. American Fruit Growers, Inc. (D. C.) 21 F.(2d) 110; Karesh v. Shell-On Sol-Ted Peanut Co. (D. C.) 17 F.(2d) 496; P. E. Sharpless Co. v. Crawford Farms (C. C. A.) 287 F. 655; Cochrane v. Deener, 94 U. S. 780, 24 L. Ed. 139; Crowell v. Harlow (C. C.) 1 F. 140; Davey Tree Expert Co. v. Van Billiard (C. C. A.) 261 F. 996. And the process is sufficiently described to enable one learned in the art to successfully practice it.

The defendant did not teach the patentee, for the simple reason that the defendant did not know or use the process of the patent in suit before the patentee invented it.

■ None of the alleged prior uses were proven to my satisfaction beyond a reasonable doubt, and while there is no fixed rule, and much depends on the peculiar circumstances of each case, yet in none of the instances of alleged prior use was there documentary corroboration or even satisfactory oral corroboration; therefore none of them anticipate. Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U. S. 45, 60, 43

951

S. Ct. 322 (67 L. Ed. 523); Kalamazoo Loose Leaf Binder Co. v. Wilson Jones L. L. Co. (D. C.) 286 F. 715, 717; Pyrene Mfg. Co. v. Boyce (C. C. A.) 292 F. 480, 485.

The necessity of corroboration is especially true where the alleged public use is in defendant's own plant. Deering v. Winona Harvester Works, 155 U. S. 286, 15 S. Ct. 118, 39 L. Ed. 153; Adamson v. Gilliland, 242 U. S. 350, 37 S. Ct. 169, 61 L. Ed. 356; Symington Co. v. National Castings Co., 250 U. S. 383, 39 S. Ct. 542, 63 L. Ed. 1045.

There has been acquiescence in the validity of the patent, and it has to a very large extent displaced the prior art process and product; in fact, defendant pays it the flattery of imitation.

The patent is valid.

On the subject of infringement, there is no doubt in my mind as to claims 5 and 6.

Starch is a mucilaginous substance, and that was admittedly used by the defendant.

While the specification mentions as an adhesive gum-arabic, it is referred to as preferably used, and the patent is not confined to gum-arabic but to an adhesive.

The chief merit of the patent is not the whiteness of the shells nor their attractiveness when whitened, and the defendant could use any method of whitening the shells which did not include the use of an admixture of salt and a mucilaginous substance on the shell.

While the patent in suit is not a pioneer patent, and thus entitled to a broad range of equivalents, it is still entitled to such a range of equivalents as will protect the invention of the patent in suit, which is to provide a preserving compound of salt and an adhesive, which will adhere to the shells of pistachio nuts, give them a whitish appearance, and in addition make the nuts, by reason of the salt which reaches the kernel, more delectable as an article of food; and I find that starch is an equivalent of gum-arabic for the purposes of practicing the invention of the patent in suit.

There is no evidence on which I can find that starch and gum-arabic in the same quantities, when used separately, will produce the same result; therefore, although I find that starch is an equivalent of gum-arabic, as hereinbefore stated, I cannot find that claims 2 and 3, which recite specific quantities of gum-arabic, are infringed.

Claim 1 is infringed, as starch is the equivalent of gum-arabic, and claim 4 is likewise infringed, as the nuts are sprayed with a mixture of salt and an adhesive, starch, which is the equivalent of gum-arabic, while the nuts are passing through the roaster in the process practiced by the defendant.

The patent is valid, and claims 1, 4, 5, and 6 are infringed.

A decree may be entered in favor of the plaintiff against the defendant, for an injunction, with costs and with the usual order of reference as to damages.