33 C.C.P.A.(Patents)

## In re MASON et al.

### Patent Appeals No. 5187.

Court of Customs and Patent Appeals.

June 11, 1946.

190

Emory L. Groff, of Washington, D. C. (Edwin C. Axe, of London, England, of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

Appellant's application involved in the instant appeal from the decision of the Board of Appeals of the United States Patent Office has to do with a cream substitute and the method of producing it. While the claims would seem to be self-explanatory, the examiner has described the alleged invention as follows: "The claimed process involves preparing a cream substitute which will not sour or putrefy like natural cream or like artificial creams made from cream constituents and from eggs, egg albumin or egg yolks. Applicant prepares first a suspension of an emulsifying agent consisting of a chloride namely, common salt, a salt of a tribasic acid such as trisodium ortho phosphate or sodium citrate, and an edible vegetable gum such as sodium alginate; secondly, an aqueous suspension of an alkyl cellulose derivative, such as methyl cellulose; thirdly, a fat blend of a hardened oil of the leguminosae group, such as hardened arachis oil (hydrogenated peanut oil), butter fat and a hardened oil of the palmae group, such as coconut oil; then the first and second aqueous suspensions are mixed together with glycerine to form an aqueous gum base and the fat blend (third) is injected under pressure into the aqueous gum base to form an emulsion, the emulsion is homogenized first at a high pressure and then at a low pressure and the product is aged for 72 hours at low temperatures."

The references relied upon are: Block 987,849 Mar. 28, 1911; Beckman et al. 1,190,369 July 11, 1916; Beckman et al. 1,216,052 Feb. 13, 1917; Dunham 1,302,-486 Apr. 29, 1919; North 1,509,083 Sept. 16, 1924; Bergsvik et al. 1,941,243 Dec. 26, 1933; Hellerud 1,941,261 Dec. 26, 1933; Green et al. 2,097,224 Oct. 26, 1937; Industrial and Engineering Chemistry, Sept. 1937, page 985.

Claim 14 is illustrative and reads: "14. A process for the manufacture of a cream substitute, comprising, the steps of preparing a first aqueous suspension of an emulsifying agent consisting of a harmless chloride, a harmless salt of a tribasic acid, and an edible vegetable gum, preparing a second aqueous suspension of an emulsifying agent consisting of an alkyl cellulose or derivative thereof, preparing a basic fat blend by mixing a hardened oil of the leguminosae group, processed butter fat and a hardened oil of the palmae group, preparing an aqueous gum base by mixing the said two suspensions with glycerine and emulsifying said basic fat blend in said aqueous gum base by injecting under pressure said basic fat blend into said aqueous gum base."

All of the claims, numbered 14 to 18, inclusive, were rejected by the Primary Examiner as being unpatentable over the state of the art, and such rejection was approved by the board. There were several other grounds of rejection against the claims which are of no concern here. On the ground that the claims were not inventive over the cited prior art, the examiner stated:

"Claims 14 to 18 have been rejected as lacking invention over the art cited. The various materials used by applicant are shown to be old in a like relation in the art.

"The composition and the method of making it are obvious in view of the art. In re White, 39 F.2d 974, 975, 17 C.C.P.A., Patents, 956, 397 O.G. 5:

"'Appellant's product is evidently the result of using a particular formula or recipe whereby well-known ingredients are mixed or blended. His plan differs from other formulas or recipes, but we think this cannot be held to be patentable invention. It is a matter of common knowledge that new

recipes for cooking and for the production of food products are constantly being developed by adding or eliminating well-known ingredients or treating them in ways differing from former practice. To hold all these patentable would unsettle the arts of cooking and of preparing food products. It surely was not contemplated that they should come within the purview of the patent laws, unless more appears than we can find in the instant case.' In re White, 39 F. 2d 974, 17 C.C.P.A., Patents, 956, 397 O. G. 5.

"Green shows alginates as old in stabilizing chocolate milk drinks containing butter fat. Page 1, line 35 shows that sodium alginates contain trisodium phosphate a salt of a tribasic acid, conventionally. Vegetable gums are disclosed, namely, locust bean gum and Karaya gum.

"Bergsvik makes a substitute cream by the use of arachis (earth nut or peanut) oil which has been hardened, and uses high pressure homogenization to produce a permanent emulsion.

"North makes a substitute cream by the use of vegetable gums as stabilizers, butter fat, agar, egg white and water and produces an emulsion by known mechanical means. Agar when treated with sodium carbonate, etc., produces sodium alginate.

"Beckman 1,216,052 makes a substitute cream using beef and butter fats, vegetable gums and mosses, arachidic glycerides, which commercially would be represented by peanut oil, since the glycerides of the various acids mentioned therein correspond generally to peanut oil. It will be noted that the fat solution with lecithin stabilizer is poured slowly into the emulsifier containing the aqueous suspension, which is the conventional process step of emulsifying fats in water solutions or suspensions.

"Beckman 1,190,369 is similarly pertinent.

"Dunham makes a substitute cream using nut oil (arachis oil) hardened or hydrogenated, as an example of a number of edible oils which may be used, common salt, citrates, phosphates emulsified into an aqueous medium and homogenized. Casein, egg powder and milk solids may be used depending on the fat content of the product desired.

"Industrial & Eng. Chemistry, September 1937 page 985 teaches the use of methyl cellulose as an emulsifying and thickening agent in food products and points out that it is not susceptible to bacterial deterioration.

"Block makes a substitute milk from oil of benne (sesame oil), water, sugar, albumen, sodium phosphate, calcium phosphate and vegetable gum tragacanth and combines this material with skimmed milk.

"Hellerud makes a substitute cream from skim milk, hardened arachis oil, egg yolk water soluble proteins as a stabilizer, then pasteurized at 60° C. and the fat is injected at 100 to 250 atmospheres through 0.3 mm. nozzles, the temperature raised to 85° C., cooled somewhat and then passed through a high and then a low pressure homogenizer, cooled to 2° C. and matured for 24 hours. The last treatment may be repeated once or twice more."

It will be observed from the above quotation that each of the references and their applicability to the appealed claims have been explained and discussed and it will not be necessary for us to go further into that question.

The board in its decision stated in part:

"Each of the appealed claims has been rejected as unpatentable over the state of the art. This is on the ground that the various ingredients set forth in the claims are all shown to be quite commonly used for making this type of product and no specific new cooperative relation is apparent as between them. The examiner has set forth at length a discussion of the several references showing that the mixtures of ingredients other than the alkyl cellulose appears to be so well known as to be conventional. The eight patents of record, relating to methods for making cream and milk substitutes on the principle of emulsifying vegetable and animal fats by assistance of emulsifying agent of a colloidal and mucilaginous nature, show it to be well known. On the other hand the employment of methyl cellulose as an assisting emulsifying agent for making the similar food product, salad dressings, is likewise shown to be known in the Industrial and Chemical Engineering citations.

"After careful consideration of the record it is our view that no such new or outstanding result is produced by employment of methyl cellulose in connection with the specific mixture of ingredients used by applicants as to constitute invention."

In this court appellants urge that no one of the cited references shows the use of an "alkyl cellulose in any way in preparing a cream substitute." It will be observed, however, that both tribunals below pointed out that Industrial and Chemical Engineering shows "the employment of methyl cellulose as an assisting emulsifying agent for making the similar food product, salad dressings." The board was of the opinion that appellants had brought about no such outstanding results by their use of methyl cellulose as to constitute invention.

The examiner quoted a pertinent holding from In re White, supra, which the board approved. So do we. Surely it does not amount to invention to add a well-known ingredient whose characteristics are well understood to a cooking recipe or formula for preparing a food product merely because it is not disclosed that no one else ever did that particular thing. One should not have a patent on a process for preparing a cake merely because he used one ingredient of common use in cooking which no one else had used in making a cake. If the particular article which appellants add in making their cream substitute, which is not shown to have been used by others in that exact relationship, by coaction with the other elements produced a new, unexpected and useful function, invention might rest in so doing. There is no showing of that character in the instant record and we are in agreement with the board that what appellant has done does not rise to the dignity of invention.

We quote from appellants' brief: "Appellants do not agree that 'no specific new cooperative relation is apparent as between them' (i. e. the ingredients), and in particular desire to point out that after long and careful research they have found that the particular emulsifying agents employed are uniquely adapted to attain the result here in view, and that unless these two emulsifying agents are separately prepared and subsequently mixed, as recited in the claims, the desired qualities obtained by appellants' product are not realized, and further that appellants have found and disclosed the optimum aqueous gum base into which the particular basic fat blend recited should be injected to secure the desired results."

We note that coaction is claimed; the record does not disclose any and we have no reason to believe that the tribunals of the Patent Office were wrong in this phase of their holdings.

As to the argument that "unless these two emulsifying agents are separately prepared and subsequently mixed * * * the desired qualities ·* * * are not realized," and that this brings about new and unexpected results, we think it is without merit. It is one of the oldest expedients in the cooking art and in the art of preparing food products to separately mix different ingredients and then put them together. Often it is done for the purpose of better dissolving the ingredients and getting them more thoroughly mixed. Every cook and housewife daily adopts this expedient and we are of the opinion that doing so does not lend patentability to the appealed claims.

The decision of the board is affirmed.

Affirmed.

GARRETT, Presiding Judge, sat during the arguments of this case, but because of illness took no part in its consideration or in the decision.