37 C.C.P.A. (Patents)

### Application of LEVIN.
### Patent Appeal No. 5625.

United States Court of Customs
and Patent Appeals.
Dec. 12, 1949.

Joseph G. Denny, Jr., Philadelphia, Pa., for appellant.

E. L. Reynolds, Washington, D. C. (Clarence W. Moore, Washington, D.C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Associate Judges.

O'CONNELL, Judge.

. This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 1–10 in appellant's application for a patent for an alleged invention relating to an improved food product and a method of making it.

Claims 1–5 and claim 10 are for the product and claims 6–9 for the method. Claims 3, 4, 6, and 9 are illustrative and read as follows:

"3. A butter substitute food product comprising an emulsion of oil-in-water type having water as its continuous phase and a dispersed phase comprising small globules of butter fat, egg yolk sufficient to form an anti-oxidizing coating on all said globules and an edible acid in bactericidal proportions to the water.

"4. A soft, spreadable food product comprising an emulsion of oil-in-water type having water as its continuous phase and a dispersed phase comprising small globules of butter fat, egg yolk sufficient to form anti-oxidizing coatings on all said globules, starch and an edible acid in bactericidal proportion to the water.

"6. A method of making an oil-in-water emulsion of spreadable consistency from a butter fat emulsion which comprises combining therewith a water soluble edible vegetable colloid, edible bactericidal acid and egg yolk substantially free from albumin.

"9. The method of making a spreadable food product resistant to spoilage at room temperature which comprises adding approximately two parts by weight of water-soluble gum and approximately fifty parts by weight of starch to cream containing approximately one hundred and fifty parts by

weight of butter fat, heating the resulting composition to a pasteurizing temperature, cooling the resulting mixture and during cooling dispersing therein an edible acid bactericide equivalent by titration to approximately 13.5 parts by weight of acetic acid and dispersing in the composition approximately one hundred parts by weight of uncooked egg yolk."

No claims were allowed and all of them were rejected as lacking invention over prior art as disclosed in the following references:

| Smith | 148,707 | March 17, 1874 |
| McGregory | 430,536 | June 17, 1890 |
| Sorensen (Br.) | 12,355 | Of 1907 |
| Riegel (Br.) | 12,095 | Of 1907 |
| Kronenberger | 1,024,009 | April 23, 1912 |
| Joungster | 1,261,820 | April 9, 1918 |
| Plaisance | 1,311,709 | July 29, 1919 |
| Heuser | 1,550,358 | Aug. 18, 1925 |
| Baker | 1,553,204 | Sept. 8, 1925 |
| Reynolds | 1,815,727 | July 21, 1931 |
| Schwarzkopf (Br.) | 378,273 | Of Aug. 11, 1932 |

Lord's "Everybody's Cook Book" Ed. 1, 1924, Henry Holt and Co. N. Y., Pages 673 to 677.

The involved subject matter was thus described by the board:

"* * * The product is of a spreadable or semi-solid consistency. The ingredients used are butter fat or cream, egg yolk, edible acid, an emulsifying or stabilizing colloid, and in certain cases, an absorbent colloid such as starch. In compounding the ingredients the fat is emulsified in water and the stabilizers and absorbent mixed therewith. The mixture is then pasteurized at about 185°F., and, after cooling, the acid and egg yolk are added and dispersed throughout the composition. According to the brief, the invention is predicated primarily upon the discovery that by forming protective films upon butter fat globules of cream at or before heating to a sterilizing or pasteurizing temperature, there may be added thereto, without curdling, sufficient acid to act as a bactericide on the sterilized butter fat or upon egg yolk added to the acidified mix to prevent oxidation of the butter fat. Also, there must be a specified degree of acidity. The product is said to be capable of preservation in closed containers without refrigeration for six months."

No single reference shows all of the ingredients and steps set forth in the appealed claims. However, more than one reference may be properly considered in determining the patentability of claims. Accordingly, no point can be successfully made here that in the combined references upon which the tribunals of the Patent Office relied there was no clear disclosure or suggestion of each and every ingredient of the product and step of the method defined by the appealed claims.

The Primary Examiner discussed no reference by name but he specifically indicated that the cited patents showed it was old in the making of butter substitute compositions to use edible acids, gums, starch, and egg yolk, and to use them together in the customary way and for the same purpose as they were used by appellant. The Board of Appeals explained that the preservative effects of edible acids are known and specifically disclosed in connection with foodstuffs in the patent to Plaisance; and that the remainder of the cited references are cumulative and therefore need not be discussed, other than to note that various colloidal stabilizers and pasteurization are therein shown.

Appellant has variously identified his claimed composition as a spreadable food product of substantially butter-like consistency, or as a butter substitute. However, the Primary Examiner, to whom samples of the resultant product of appellant's method were submitted, stated that those samples were no different in consistency from that of the conventional mayonnaise or salad dressing, and that the product in issue would be more aptly identified as a salad dressing or mayonnaise made with cream or butter fat.

The board in its decision also found that the product defined by the appealed claims is comparable with salad dressings or mayonnaise as commercially marketed in closed containers, and took judicial notice of the fact that such products are maintained without spoilage for many months on grocers' shelves.

Appellant contends in his brief that the degree of acidulation defined by the ap-

pealed claims is critical and that the acid used should be sufficient to impart an acidity equivalent to that imparted by 2.2% of acetic acid based on the weight of the water. On the question of criticalness, the affidavit of record of Ralph Pressman, Ph.D., merely notes that the acid in such proportions as are recited by appellant "would have a bactericidal or bacteriastatic effect on the micro-organisms which promote rancidity and putrefaction of dairy products." Moreover, as noted in claim 3, the pertinent limitation merely defines "an edible acid in bactericidal proportions to the water"; and in claim 6, no reference whatever is made to the proportions of the acid to the water.

Based upon the facts disclosed by the record, we find no manifest error in the following conclusion expressed in the decision of the board:

"* * * Nothing critical is seen in the proportions as specified in certain of the claims and nothing unusual appears in the compounding procedure. The relationship of heat and acidity on curdling of dairy products is well-known to food chemists and in the light of this knowledge it would be obvious to add the acid after the heating step, where curdling is a factor to be considered."

The respective tribunals of the Patent Office reached the final and concurring conclusion that, in view of the art of record, appellant had merely associated well-known ingredients in a unitary composition, with no new or unexpected cooperative relationship between them.

■■ Invention may reside in a composition of matter formed by the intermixture of two or more ingredients which results in a product possessing characteristics of utility that are new, additional and materially different from the property or properties which the several ingredients individually do not possess in common. P. E. Sharpless Co. v. Crawford Farms, Inc., 2 Cir., 287 F. 655. Likewise, a valid patent may be granted in a proper case for a product and method involved in the preservation of specific foodstuffs. Zenobia Co., Inc., v. Shuda, D.C., 30 F.2d 948.

■■ This court has taken the position that new recipes or formulas for cooking food which involve the addition or elimination of common ingredients, or for treating them in ways which differ from the former practice, do not amount to invention merely because it is not disclosed that, in the constantly developing art of preparing food, no one else ever did the particular thing upon which the applicant asserts his right to a patent. In all such cases, there is nothing patentable unless the applicant by a proper showing further establishes a co-action or cooperative relationship between the selected ingredients which produces a new, unexpected, and useful function. In re White, 39 F.2d 974, 17 C.C.P.A., Patents, 956; In re Mason et al., 156 F.2d 189, 33 C.C.P.A., Patents, 1144.

Appellant asserts in his brief that the primary characteristic of his alleged invention is the production of a dairy product having qualities which keep well; that such qualities result from the coaction of the acid, the egg yolk and the gum or starch, which are combinable with the cream, without coagulation thereof, by the steps set forth in claims 6 and 9; and that appellant's ingredients by coaction with one another have produced a new, unexpected, and useful function.

■ The difficulty with appellant's argument is that no specific cooperation between his selected ingredients has been shown as required by the rule laid down in the last two cases of this court hereinbefore cited. Statements made in appellant's application and in the Pressman affidavit are manifestly insufficient to establish here that the appealed claims define a patentable composition of matter that is superior or materially different from the disclosures of the art of record. In re Swenson et al., 132 F.2d 1020, 30 C.C.P.A., Patents, 809; In re Swain et al., 156 F.2d 239, 33 C.C.P.A., Patents, 1250.

■ The Solicitor for the Patent Office concedes in his brief that novelty has been shown on the part of appellant by the record in this case. However, in the absence of invention, novelty is not sufficient to support the allowance of claims for a pat-

ent. In re Hass et al., 141 F.2d 122, 31 C. C.P.A., Patents, 895.

In view of our conclusion hereinbefore expressed, we deem it unnecessary to discuss other points raised by appellant.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.

By reason of illness, HATFIELD, Judge, was not present at the argument of this case and did not participate in the decision.