31 C.C.P.A. (Patents)

## In re BERGER.

### Patent Appeal No. 4906.

Court of Customs and Patent Appeals.
June 26, 1944.

James Edwin Archer, of Stamford, Conn., for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all of the claims, 1 to 9, inclusive, in appellant's application for a patent relating to brake linings and a process for making the same.

The instant application discloses processes for manufacturing brake linings by the use of a resinous binder produced by the condensation of an aminotriazine with an aldehyde. This resinous binder is mixed with a suitable filler, such as asbestos, and a resin solvent, and the resulting mixture is either extruded or molded. By the subsequent application of heat and pressure, the solvent is volatilized and the resin polymerized.

Four of the claims (Nos. 1 to 4, inclusive) are directed to the article, and the remaining five claims (Nos. 5 to 9, inclusive) are directed to the process. Claims 1 and 5 may be taken as examples. They read as follows:

"1. A brake lining comprising a filler and an aminotriazine-aldehyde resin.

"5. A process of producing brake lining which comprises extruding a mixture containing a filler and an aminotriazine-aldehyde resin and a resin solvent, volatilizing the solvent from the extruded material and polymerizing the resin."

Claims 2, 3, and 4 are more specific than claim 1 in that they recite melamine as the aminotriazine and formaldehyde as the aldehyde. Claims 3 and 4 also specify asbestos as the filler, and claim 4 includes an alkyd resin. Claim 6 requires a wetting of the filler with a solvent before mixing with the resin. Claim 7 recites ethyl alcohol as the solvent. Claim 8 is limited to the use of a dry melamine-formaldehyde resin and is directed to a molding rather than an extrusion of the resulting mixture. Claim 9 is also directed to the molding process and requires polymerization of the product to a substantially infusible and substantially insoluble state.

The references are: Achtmeyer, 1,429,-267, Sep. 19, 1922; Tennant (Br.), 455,008, Oct. 12, 1936; Nanfeldt, 2,061,918, Nov. 24, 1936; Nanfeldt, 2,061,919, Nov. 24, 1936; Bloxam (Br.), 468,677, July 8, 1937; Carpmael (Br.), 475,072, Nov. 12, 1937; Carpmael (Br.), 490,688, Aug. 19, 1938.

The Achtmeyer patent relates to a "Phenolic Condensation Product and Methods of Making Same." It discloses the use of phenolic resins prepared from phenol and methylene-diphenyl-diamine in brake lining compositions. The phenol and methylene-diphenyl-diamine are heated together and mixed with a small percentage of paraformaldehyde or trioxymethylene. The patentee states that his composition may be thinned with amyl acetate or alcohol. Asbestos or other brake lining material may be impregnated with the resin and heated, or a mixture of the resin and asbestos material may be molded to the desired shape and heated at higher temperatures to render the final product infusible and insoluble.

The British patent to Tennant relates to the "Manufacture of Condensation Products" and discloses the reaction of diazines and aminotriazines, such as melamine, with lower aliphatic mono-aldehydes, such as formaldehyde and acetaldehyde, the use of solvents, such as alcohols and dioxane, and the use of fillers, such as asbestos, mica, wood meal, and the like. Hardening of the resins and molding or pressing of the resinous masses are also disclosed.

The Manfeldt patents cover brake band linings containing asbestos fibre and rubber, and a process for making such linings. One step in the process involves the extrusion of a mass consisting of rubber, asbestos fibre, a suitable solvent, and other ingredients. Subsequently, by the application of heat, the solvent is evaporated and the rubber band is cured or vulcanized by heat and pressure.

The British patent to Bloxam discloses the reaction of aminotriazines with formaldehyde and subsequent polymerization to convert the condensation products "into resinous products which are infusable and insoluble in water, and are therefore suitable for very many purposes, for instance as binding agents for the production of moulded or laminated products," etc.

The Carpmael British patent, No. 475,-072, also relates to the reaction of aminotriazines with aldehydes and states that the "resins thus obtained may be employed in admixture with other natural or artificial resins such for example as phenol, urea,

aniline, alkyd and ketone resins." The patent further states that "Practically all articles are obtainable with or without filling materials and dyestuffs, as are known in the industry of phenolic resins."

The other Carpmael British patent, No. 490,688, deals with the manufacture of objects for electrical insulation and construction. It discloses the reaction of aminotriazines with aliphatic aldehydes, the use of fillers, such as wood-dust, cellulose, quartz-dust, and asbestos, and the molding and hardening of the resinous masses.

The examiner rejected claim 1 as "unpatentable over any one of the British patents," stating that they all disclose amino-triazine-aldehyde resins and fillers. He pointed out that Achtmeyer discloses the use of phenol resins for brake lining and that Carpmael No. 475,072 states that aminotriazine resins may be used like phenol resins. He rejected claim 2 "as claim 1" on the same British patents, pointing out that those patents disclose the use of melamine.

Claim 3 was rejected by the examiner as unpatentable over the British patents to Tennant and to Carpmael (No. 490,688), which disclose the use of asbestos with the resin.

Claim 4 was rejected as unpatentable on the earlier Carpmael patent, which discloses the addition of an alkyd resin.

As to claim 5, the examiner stated that the process "is the same as that of Nanfeldt except for the resin" and that the "substitution of a different plastic is not considered a patentable change on the authority of." In re Dreyfus, 65 F.2d 472, 20 C.C.P.A., Patents, 1204, 18 U.S.P.Q. 63, and In re Seebach, 88 F.2d 722, 24 C.C.P.A., Patents, 1101, 33 U.S.P.Q. 149.

With respect to the "wetting" limitation of claim 6, the examiner was of the opinion that there was no invention in the manner of introducing the solvent and rejected the claim for the same reasons as for claim 5.

He rejected claim 7 as "unpatentable over Nanfeldt for the reasons employed in the rejection of claim 5."

Claim 8 was rejected as "not reading on the elected species and unpatentable in the absence of an allowable generic claim."

As to claim 9, the examiner was of the opinion that the heat hardening of the resins disclosed by the British patents converts the resin to the infusible and insoluble state and that there is nothing patentable in this limitation. He stated that "claim 9 is rejected as claim 5."

The Board of Appeals referred only to the British patents and to Achtmeyer and apparently relied heavily upon the disclosure of the earlier Carpmael patent that "all articles are obtainable as are known in the industry of phenolic resins," when considered with the disclosure of Achtmeyer showing the use of phenolic resins in brake linings. The board then said:

"It is our view that the known properties of melamine resins obviously suggest their use for brake linings. The fact that melamine resins are more expensive does not indicate invention in their use when they are used because of their known properties.

"From appellant's brief, we do not understand that he relies for patentability on the various added features of claims 2, 3 and 4.

"As to the process claims, we see no invention over the art where Achtmeyer shows the same process steps with a different resin. The details of claims 5, 6, 7 and 9 are not contended to be patentable over the art. In some cases, process claims are allowed along with composition claims but we do not believe such a rule should be applied to the facts of this case where the process is a conventional one substituting one heat hardening resin for another previously used by Achtmeyer.

"In brief, it is our view that anyone skilled in the resin art would immediately see the adaptability of melamine resins as brake linings. The mere fact that applicant was first to use these resins in brake linings is not indicative of invention."

Appellant here contends that none of the references except Nanfeldt and Achtmeyer relate to brake linings; that Nanfeldt's rubber binders are obviously entirely different from those of appellants; that the British patents, while disclosing aminotriazine-aldehyde resins, do not suggest in any way that these resins might be useful as binders in brake linings; that it was not obvious to use aminotriazine-aldehyde resins in this respect because other closely analogous resins, such as the urea-formaldehyde resins, are unsuitable for use as brake linings; and that experimentation was required to discover that the aminotriazine-aldehyde resins are suitable as brake linings. In short, it is the contention of appellant that wherever "experimentation is required,

invention of a patentable degree is made"; and in this connection appellant relies upon In re Sibley, 88 F.2d 960, 24 C.C.P.A., Patents, 1143, 33 U.S.P.Q. 212, and Corona Cord Tire Co. v. Dovan Chemical Corporation, 276 U.S. 358, 48 S.Ct. 380, 72 L.Ed. 610. Appellant also argues that the use of a new material in a product, machine, or process has often been held to constitute a patentable invention, relying upon Smith v. Goodyear Dental Vulcanite Co., 93 U.S. 486, 23 L.Ed. 952.

In answer to appellant's contention that where "experimentation is required, invention of a patentable degree is made," it is sufficient to say that the cases cited do not support the broad statement of appellant. Experimentation *may* produce a result through the exercise of the inventive faculty. This has been held to be true in cases where the art taught that the thing could not be done, or did not suggest that it might be done, or where catalytic action or the use of some material was wholly unpredictable.

The cases cited and relied upon by appellant do not support his contentions here as the facts in those cases differ from the facts in the instant case.

■ Many statements appear in appellant's brief concerning the unexpected superiority of the aminotriazine-aldehyde resins over those previously used for brake lining, but there is no evidence in the record to support those statements, other than general assertions in appellant's application, and such assertions are insufficient. See In re Greider et al., 129 F.2d 568, 29 C.C.P.A., Patents, 1079, 54 U.S.P.Q. 139.

■ It is our view that the Board of Appeals committed no error in affirming the action of the examiner in disallowing the claims, for the reasons stated by it. We conclude that since the properties of melamine-formaldehyde resins were well known and the use of phenolic resins in brake lining manufacture was also well known, it would not involve invention to experiment with resins such as those used by appellant and find that they were useful in brake linings. It was old in the art to use asbestos as a filler, and it was also old to extrude or mold brake lining material and treat it as appellant does and as is called for by some of the claims. Appellant may be right in his contention that the brake lining made by his process is a

better one than the cited prior art discloses. However, we are of opinion, for the reasons stated that the appealed claims do not involve invention.

■ Claim 8 being for a non-elected species and there being no reason of appeal assigned concerning that ground of rejection and no generic claim having been allowed, we need give it no further consideration.

The decision of the Board of Appeals is affirmed.

Affirmed.