33 C.C.P.A.(Patents)

In re SWAIN et al.

Patent Appeal No. 5175.

Court of Customs and Patent Appeals.
June 27, 1946.

James Edwin Archer, of Stamford, Conn., for appellants.

W. W. Cochran, of Washington, D. C., for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

O'CONNELL, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner in rejecting claims 5, 6, 7, 8, and 10 in appellants' application for a patent on coating compositions containing cellulose acetate and melamine-formaldehyde resins. Claims 5, 6, and 10 were rejected as lacking invention over the cited references and claims 7 and 8, drawn to a non-elected species, "as not readable on the elected species, since there is no allowable generic claim."

Claim 5 is selected as illustrative of the subject matter. It reads—"5. A coating composition containing cellulose acetate and a melamine-formaldehyde resin which has been reacted with an alcohol containing from 3 to 8 carbon atoms and wherein the molal ratio of formaldehyde to melamine is at least about 4:1, the weight ratio of cellulose acetate to melamie resin being at least about 9:1."

The references are—Moss 1,815,444 July 21, 1931; Moss 1,977,642 Oct. 23, 1934; Page 11, "Vinylite, Series V Resins for Surface Coatings", pub. 1939 by Carbide & Carbon Chem. Corp., N. Y. City; Widmer et al. 2,197,357 Apr. 16, 1940; Moore 2,218,474 Oct. 15, 1940.

This appeal is but one of four cases collectively presented here for determination. Because the parties are identical, the cases very closely related, and the same questions of patentability involved, the four cases were argued at the same time. As described in the Solicitor's brief—"All of the applications relate to coating compositions adapted for application to metal objects and to be baked thereon to form a hard transparent film. All of the compositions contain a melamine-formaldehyde resin which has been reacted with an alcohol and in addition they contain one or another of the following: cellulose acetate, ethyl cellulose or polyvinal acetate acetal. The claims recite certain minimum proportions or a range of proportions of the last named materials to the resin, a certain minimum proportion of the formaldehyde to melamine in the resin, and certain limitations as to the alcohol employed. In general the rejection of the claims has been on the ground that recited proportions were ascertained by mere routine experimentations without the exercise of invention."

Of the cited references in the instant case, the patent to Moss, No. 1,815,444, dis-

closes an adhesive liquid coating composition containing a mixture of cellulose acetate and a synthetic resin compatible therewith in a volatile solvent, in which the proportions of cellulose acetate and synthetic resin, as described in example 1, range from 1:9 to 9:1.

In Moss, No. 1,977,642, a coating composition is disclosed containing cellulose acetate to which natural or synthetic resins may be added to improve not only the strength but also the adhesive qualities of the composition. Moss recites an extensive list of suitable synthetic resins.

The publication of the Carbide & Carbon Chemical Corporation, "Vinylite," discloses compatibility ranges of "Vinylite resin" and numerous other film-forming materials established by compatibility tests.

Widmer et al. discloses coating compositions made of melamine-formaldehyde-alkyl resins which may be used as lacquers. Many species of the composition are described in 49 examples printed in the specification.

Example 1 shows a mixture of formaldehyde and melamine in the molal ratio of 8 to 1 and the compound thus obtained is added to butyl alcohol, as described in example 9, which in turn, "may be added, for example, to nitrocellulose lacquers in order to lend them hardness and filling capacity."

The patent to Moore relates to coating compositions such as varnishes, lacquers, "and in general, to film-forming compositions for the production of films requiring good strength, hardness, and adhesive power." Blends of melamine-formaldehyde-resin and alkyd resin may be mixed "with other materials of the same or different classes such as cellulose esters or ethers including nitrocellulose, cellulose acetate."

Moore is illustrated by twelve examples which describe certain of the more specific features of his invention. Example 1, for instance, describes a melamine-formaldehyde resin, reacted with n-butanol. This resin is mixed with nitrocellulose to make a lacquer. The molal ratio of formaldehyde to melamine described in example 1 is 4.5:1.

The crux of the issue in the respective appeals presented herewith is explicitly set forth in the decision of the examiner in the instant case. It is deemed advisable to quote the following excerpt therefrom, omitting numerical references to pages:

"Claim 5 stands rejected as unpatentable over Moore. The Moore patent contains several examples of mixtures of the specific claimed melamine-formaldehyde-alcohol resins and nitrocellulose including one in which the nitrocellulose-melamine resin ratio is 4:1. He teaches that cellulose acetate may be used instead of the nitrocellulose (which is cellulose nitrate). The claim differs from Moore only by specifying that the weight ratio of cellulose acetate to melamine resin is at least 9:1. Applicants have determined that if more than 10% of the claimed melamine resin is present the materials will be incompatible. Moore does not state what proportions of cellulose acetate he employs, but the art in following his teachings would obviously desire a compatible mixture; see the Moss patents, for example. *It is routine procedure in the art to determine the compatibility ranges of other film-forming materials with new synthetic resins; the Vinylite publication is exemplary of this practice.* The carrying out of such tests to determine the compatibility ranges of Moore's mixture of cellulose acetate and melamine-formaldehyde-butanol resin is no more than the obvious and necessary way of putting the teachings of the patentee into effect. This is well within the skill of the routineer and is not inventive.

"Claim 5 stands further rejected as unpatentable over Widmer et al, especially in view of the Moss patents. Widmer discloses that the specific melamine-formaldehyde-butanol resins claimed may be added to lacquers to make them harder and more water-resistant, specifically disclosing additions of such resins to nitrocellulose lacquers (Ex. 9). The addition of Widmer's resins to cellulose acetate lacquers, such as those of Moss, is not inventive in view of these teachings. The effects of such an expedient appear to be the expected ones. The melamine-formaldehyde-butanol resins are known to impart the properties of hardness, light-, heat-, water-, and chemical-resistance (see Widmer et al or Moore);

they are known to become insoluble in organic solvents on baking. The properties of cellulose acetate are well known and the addition of synthetic resins to cellulose acetate lacquers is common; see Moss. Looking at the question in another way, the substitution of cellulose acetate lacquer for the cellulose nitrate lacquer of Widmer et al. has not been shown to produce any unexpected results in view of the known properties of these two materials.

"Applicants urge that it was invention to discover that the specific melamine-formaldehyde-alcohol resins of Widmer et al. (Ex. 9) are compatible only to the extent of 10% with cellulose acetate. They state that the extent of compatibility depends on the amount of formaldehyde and the character of the alcohol; both of these limitations are present in the Widmer et al resins (Ex. 9). However, there is no evidence of record to show that melamine resins made with other ratios of formaldehyde or other alcohols are entirely incompatible with cellulose acetate. *The Examiner readily admits that the art does not know how to predict the upper limit of compatibility of two film-forming materials. However, the determination of the upper limit of compatibility is merely routine experimentation, well within the skill of the art.* * * *

* * * * * *

"Claim 6 stands rejected on the same grounds as claim 5, from which it differs by specifying that the alcohol is n-butanol. This is shown by Moore and Widmer et al.

"Claim 10 stands rejected on the same grounds as claim 5, from which it differs by specifying that the upper limit of the formaldehyde-melamine ratio is 6:1. The resins of Moore and Widmer et al clearly fall within the claimed range." (Italics supplied.)

The Board of Appeals discussed the patent to Widmer et al. and held that their example 9 directly or equivalently satisfies the terms of the claims herein as to melamine-formaldehyde-alkyl per se, and pointed out that "This applies to the formaldehyde-melamine ratio and to the alkylating alcohol."

The board also held that Widmer et al. propose combination of their melamine with cellulose nitrate; that "Moore proposes combination of melamine resin with several cellulose esters and ethers," among them the cellulose acetate of the appealed claims; and that "The patents to Moss may be taken as cumulative in showing the general utility of cellulose acetate and equivalency of it to cellulose ethers and other esters in the coating composition art."

In view of the art of record, particularly Moore, the board concluded that the appealed claims failed to set forth invention and accordingly affirmed the decision of the examiner.

The import of appellants' argument is that the examiner and the Board of Appeals erred in not holding that the claimed ratios and proportions were critical and inventive over the disclosure of the prior art of record, and in holding that no invention was involved in determining the claimed ratios and proportions by experimentation.

In support of their position appellants urge that since no person skilled in the art could predict the ratios and proportions of melamine resin which would be compatible with particular film-forming materials, routine experimentation was required; and since appellants by actual tests in the laboratory have established the relative proportions of those substances which would be compatible, the results of such experimentation are patentable, and in case of doubt, the question of patentability should be resolved in favor of appellants under the doctrine of Corona Cord Tire Company v. Dovan Chemical Corporation, 276 U.S. 358, 48 S.Ct. 380, 72 L.Ed. 610; and in re Sibley, 88 F.2d 960, 24 C.C.P.A., Patents, 1143.

What appellants really seek is a patent on a result produced in mixtures of melamine resins and various film-forming materials, the claimed ratios and proportions of which, as correctly held by the tribunals of the Patent Office, are within the ranges generally disclosed or suggested by the prior art and there was nothing in the record which established that the claimed ratios and proportions were critical.

Under the law it was incumbent upon appellants to establish by a proper showing that they have invented a coating

composition possessing characteristics or qualities of utility that are new and materially different from the compositions disclosed in the cited references. See In re Swenson et al., 132 F.2d 1020, 30 C.C.P.A., Patents, 809; In re Cooper et al., 134 F.2d 630, 30 C.C.P.A., Patents, 946, and authorities therein cited.

Appellants rely upon an affidavit and the tables submitted by them in these appeals as illustrating and proving that the claimed "ratio of formaldehyde to melamine, as well as the alcohol reacted with the melamine resin, is critical." That evidence, however, is clearly insufficient, as disclosed upon examination, to sustain their burden of proof on the issue of criticality.

Appellants assert that the decisions by the tribunals of the Patent Office were erroneously based on a mistake of fact not only in the case at bar but also in two of the other appeals presented herewith. In support of that position, appellants contend—"In the rejection of the claims in Appeal Nos. 5175, 5176 [156 F.2d 244] and 5177 [156 F.2d 245], which are all based primarily on the Widmer et al. patent, on the ground that there is no invention in substituting cellulose acetate or ethyl cellulose for the nitrocellulose, attention is called to the fact that the Examiner has not given any reason for alleging that either cellulose acetate or ethyl cellulose are equivalent to nitrocellulose. All of these products have separate and distinct properties, and in the absence of some reference to show that they are all equivalent, it is submitted that the rejection of the Board of Appeals is untenable."

The point in question is not properly before the court. If appellants wished to challenge the statement of the examiner, they should have requested him to cite his authority for the statement. If the cited authority was based upon facts within his personal knowledge, appellants should have proceeded under rules 66 and 76 of the Patent Office, 35 U.S.C.A. Appendix, and called for the affidavit of the examiner, thereby placing themselves in a position to contradict or correct the examiner's statement. Having failed to do so, the statement must be accepted here as correct. In

re Lewis, 96 F.2d 1009, 25 C.C.P.A., Patents, 1273; In re Eliot, 76 F.2d 309, 22 C.C.P.A., Patents, 1088.

The examiner in the instant case stated that the art cannot predict the upper limit of compatibility of two film-forming materials and in each of two other cases appealed herewith the examiner also stated that the art cannot predict just what will be the limits or top limit of compatibility of any new resin with ethyl cellulose.

The statements of the examiner on the point in question cannot be interpreted as a valid holding that it would constitute invention to experiment with the involved substances and thereby determine the limits of their compatibility. "But," as correctly pointed out by the Solicitor for the Patent Office, "it is precisely because those skilled in the art cannot predict with certainty that they ever make experiments or tests. It does not follow that the results of such experiments amount to invention." Moreover, as the examiner properly held herein, it is old in the art to establish such limits by experimentation.

It was also old in the art to use melamine resin with cellulose material in mixtures to form a coating composition and the substitution of one known cellulose material for another does not involve invention in the absence of a proper showing of a new and unexpected result.

The art of record discloses such mixtures in compatible proportions. The relative proportions or limits of compatibility described in the examples contained in the cited references are not in some instances precisely the same as those defined in the appealed claims. The difference in proportions in such instances, however, was not shown to be critical and could be and was ascertained by routine experimentation.

What appellants have done here is the thing that the prior art suggests doing and under the authorities hereinbefore cited the court is not authorized to grant the allowance of claims 5, 8, and 10. See also In re Berger, 143 F.2d 971, 31 C.C.P.A., Patents, 1234; In re Stover, 146 F.2d 299, 32 C.C.P.A., Patents, 823; Minnesota Mining & Manufacturing Co. v. Coe,

Commissioner of Patents, 69 App.D.C. 217, 99 F.2d 986. Claims 7 and 8, drawn to a non-elected species, need not be further considered, no reason of appeal having been assigned concerning the ground of their rejection and no generic claim having been allowed.

In view of our conclusion, it would serve no useful purpose to discuss and pass upon other points raised by appellants, and the decision of the Board of Appeals is accordingly affirmed.

Affirmed.